CASE No. 1013.

### HUFF v. WATKINS.

1. Under a contract by which the services of an agricultural laborer are to be compensated by a share of the crop made, but he is to work under the exclusive direction of the employer, who is to have the entire control of the laborer's time and services, the relation of master and servant exists, and the master may maintain an action against one who, with knowledge of the prior contract, employs such servant.
2. *Burgess* v. *Carpenter*, 2 *S. C.* 7, distinguished and explained.
3. A juror called in place of one removed for cause from the panel presented, may not be peremptorily challenged.
4. *Kleinback* ads. *State*, 2 *Spears* 418, and *Durant* v. *Ashmore*, 2 *Rich.* 184, recognized and followed.

Before WALLACE, J., Newberry, February, 1880.

Action commenced May 16th, 1879, by William T. Huff against William Watkins, for $1000 damages for employing Jordan Butler, a servant of plaintiff, under the contract stated in the opinion, the defendant having knowledge of this contract.

At the trial the presiding judge asked if either party had objection to any of the jury presented. The plaintiff's counsel announced that they had none; the defendant's counsel announced that he had no personal objection to any of the jurors, but suggested that if any one of them was related to either party to the suit, by blood or marriage, he should be withdrawn therefrom. Thereupon one juror announced that he was connected with the

plaintiff by marriage. The judge then directed him to withdraw. He did so, no objection thereto being made by plaintiff or his counsel. Then another juror was called in his stead. This juror was objected to by plaintiff's counsel peremptorily. The judge ruled that the plaintiff had no such right of challenge. The plaintiff excepted to the ruling.

Under the charge of the presiding judge the jury found a verdict for defendant. The plaintiff appealed.

*Mr. L. W. Simkins*, for appellant.

Butler was a servant. *Reeve's Dom. Rel.* 482; *Schouler on Dom. Rel.* 599; *Wood on Mast. & Serv.* 2, 461; 107 *Mass.* 555; 70 *N. C.* 601; 16 *Am. Rep.* 780; 43 *Ga.* 331, 601. Defendant, having notice of this relation, is liable for damages. 1 *Chit. Bl.* 427, note 20; 2 *Esp.* 646; 1 *Pars. on Cont.*, § 532, note *F;* 1 *Wait's Act. & Def.* 407; 2 *Add. on Torts*, § 1272; *Wood on Mast. & Serv.* 464. Plaintiff was entitled to his challenge. *Gen. Stat.* 523, §§ 25, 26.

*Mr. J. F. J. Caldwell*, contra.

In the matter of the challenge, the Circuit judge ruled correctly. 2 *Rich.* 184; 2 *Spears* 418. Butler and the plaintiffs were partners. *Pars. on Part.* 6, 54, 55; 45 *N. Y.* 797; 58 *Id.* 272; 4 *Rich.* 312; 2 *H. Bl.* 235; 6 *Serg. & R.* 259. Butler was certainly not a servant. *Wood on Mast. & Serv.* 1–3; 2 *S. C.* 7.

*Mr. T. S. Moorman*, in reply.

March 29th, 1881. The opinion of the court was delivered by

McIVER, A. J. This was an action brought by the plaintiff to recover damages from the defendant for enticing one Jordan Butler, who had been employed by the plaintiff as a farm laborer, to leave the employment of the plaintiff. The contract under which the said Butler, with the other farm laborers, had been employed, was not in writing, but is stated in the "case" as follows: "About the first of January, 1879, the plaintiff contracted with Jordan Butler and other persons to work his land during

the year. The plaintiff was to furnish the land, stock and farming implements, and to feed the stock, and to have the entire control of their time and services, and they to have therefor one-half of the crop that remained, after first deducting one bale of cotton, twenty bushels of corn and two hundred bundles of fodder to each horse; and that in consideration therefor they were to work under his exclusive direction and control from sun to sun, and do all things necessary for making and gathering a crop; also, that, in consideration that Jordan Butler agreed to assist the plaintiff in securing laborers and to take the lead in the work, the plaintiff agreed to pay him one bale of cotton extra."

The Circuit judge charged the jury that under the terms of said contract the relation of master and servant did not exist between the plaintiff and Butler, and, therefore, the plaintiff was not entitled to recover; to which charge exception was duly taken. The plaintiff requested the judge to charge the jury that the rule of law giving a remedy for employing the servant of another after notice, is not confined to menial servants, "but extends to all cases where the person is employed to give his exclusive personal service for a given time under the direction of an employer, who is injured by the wrongful act." This the judge refused to do, except with the qualification that it only extends to persons so employed for hire or wages of a definite sum. To this also exception was duly taken.

Most of the points presented in the argument here, have, in our judgment, been definitely settled by the decision of this court in the case of *Daniel* v. *Swearengen*, 6 *S. C.* 297, and we deem it unnecessary to add anything to what is there said as to these points. In that case it was held: *First*. That the relation of master and servant exists in this state as at common law. *Second*. That to constitute such relation it is not necessary that there should be a contract in writing. *Third*. That one who contracts as a farm laborer may come within the class of servants, menial service not being essential to place one in that class. *Fourth*. That the statutes of this state do not prescribe the only mode of redress where one entices or persuades a servant to leave the employment of his master, but that in such cases, as at common law, the master is entitled to his action for damages. It did not

appear, however, in that case whether the servants, who were there alleged to have been enticed away from their master's service, had been employed under a contract to pay them a stipulated sum of money as hire or wages, or whether, as in this case, their compensation was to be a certain proportion of the crop made. That case, therefore, furnishes no authority as to the main question presented by this appeal, which is, whether a farm laborer who is employed under a contract by which his services are to be compensated by a share of the crop, and not by a stipulated sum of money, can be regarded as a servant. It would seem, at the very outset, that the manner in which compensation is to be made ought not to have any effect in determining the nature of the relation. Where one person has agreed to give his entire time to the service of another, working under his exclusive direction and control, certainly the manner in which payment for such service is to be made cannot have any effect in fixing the relation of the parties. That must depend upon the nature of the service required by the contract, whether it is exclusively under the direction or control of the employer, or, to some extent, optional or discretionary with the employee, and whether the whole or only a part of his time is to be devoted to the service of the employer. Here the contract required the laborers to work the land of the plaintiff *" under his exclusive direction and control, from sun to sun,"* and gave him *" the entire control of their time and services."* It would be difficult to conceive what form of contract would create the relation of master and servant if this does not. If, where one binds himself, by contract, to devote his entire time, for a limited period, to the service of another, and to work under the exclusive direction and control of such other person, the relation of master and servant does not arise, we confess we are unable to see what form of contract would be sufficient for the purpose. The fact that, as an incentive, perhaps, to diligent and faithful work, the compensation of the laborer is not a fixed and definite sum of money, but is made to depend upon the amount of the proceeds of his labor, cannot change the relation in which the employee has voluntarily placed himself toward his employer. It certainly cannot, as has been argued, convert the relation into that of partners or joint owner,

of the crop. Until the crop is divided it belongs to the employer, and all that the laborer is entitled to is in the nature of a chose in action—a right to demand compensation for his labor, which, by the agreement, is to be measured by the amount of the crop made. *Rogers* v. *Collier,* 2 *Bail.* 581; *State* v. *Gay,* 1 *Hill* 364; *Holcombe* v. *Townsend,* 1 *Hill* 399. The doctrine established by these cases seems to be recognized in the statute passed for the protection of laborers. General Statutes, Chapter CIII., Section 11, page 491, which provides that: "Whenever laborers are working on shares of crop or crops, or for wages in money or other valuable consideration, they shall have a prior lien upon said crop or crops in whosoever hands it may be," for if the laborer was regarded as part owner of the crop, either as partner or otherwise, it would be altogether inconsistent to speak of giving him a lien upon what belonged to him. It is true this section proceeds to provide that: "Such of the crop or crops to them [the laborers] belonging, or such amount of money or other valuable consideration due, shall be recoverable by an action in any court of competent jurisdiction." But this language, to make it consistent with the preceding language of the same section, as well as with the provisions of the preceding section, must be construed as applying only, after the division of the crop has been made, and the portion to which the laborers are entitled, has been ascertained in the manner provided for in the tenth section.

The case of *Burgess* v. *Carpenter,* 2 *S. C.* 7, is not in conflict with these views, because, although the Circuit judge, in that case, did rest his decision upon the ground that a contract to pay a laborer for his services by giving him a share of the crop, constitutes the laborer a partner and not a servant, the Supreme Court did not place its decision upon any such ground, but upon the ground that the common law gave no right of action to the master for any injury done to the servant, except where the servant was a menial one, and as the employee, whose *status* was there in question, was an agricultural laborer and not a menial servant, the action could not be maintained by the employer. This view, as we have seen, has been repudiated in the subsequent case of *Daniel* v. *Swearengen, supra.* It is true that

Moses, C. J., in the latter part of his opinion, where he is attempting to reconcile the case of Daniel *v.* Swearengen with the previous case of Burgess *v.* Carpenter, does say that the decision in the latter may be supported upon the ground that the nature of the contract between the employer and the employee, in that case, gave rise to the partnership relation and not to the relation of master and servant. But in addition to the fact of this being a mere *dictum*, it is very obvious that the Chief Justice entirely misrepresents the decision in Burgess *v.* Carpenter, in stating as the material ground of that decision, not the ground upon which *the majority of the court* rested its decision, but the ground upon which *the Circuit judge* based his conclusion, which seems to have been the ground upon which *the minority of the court* rested the separate opinion. For it is quite clear that the Circuit judge, in Burgess *v.* Carpenter, based his conclusion solely upon the ground "that the contract to pay Henry Burgess a share in the crop made him a copartner and not a servant," and if the majority of the Supreme Court endorsed that view, it would have been very natural for them to have said so, as that would have been conclusive of the case. But, on the contrary, we find nothing of the kind in the opinion of the majority of the court, but we do find there an argument to show that the master's right of action only arose where the servant injured was a menial servant, and the conclusion is drawn that "Henry Burgess being exclusively concerned in the cultivation of the soil and proceeds arising therefrom, and there being no domestic caste in the nature of his service, [which seem to have been regarded in the cases cited as a test of menial service,] he does not fall within the class to which the term 'servant' can, in any sense, be applied." We do not think that this *dictum* in the case of Daniel *v.* Swearengen, even were it better supported, is sufficient to overthrow the authority of the cases of *Rogers* v. *Collier, State* v. *Gay* and *Holcombe* v. *Townsend, supra,* especially when we find that the principle established by those cases has been recognized, impliedly at least, by the legislature in the statute for the protection of laborers, as we have previously shown. We think, therefore, that there was error in the charge to the jury in this case, as well as in the refusal to charge as requested.

The only remaining question is, whether the Circuit judge erred in refusing to allow the plaintiff to challenge a juror peremptorily who had been drawn to fill the place of a juror removed for cause. The ruling of the Circuit judge is fully sustained by the case of *Kleinback* ads. *State,** 2 *Spears* 418 which was an action of debt for a penalty imposed by an ordinance of the city council of Charleston, and by the case of *Durant* v. *Ashmore,* 2 *Rich.* 184. The case of *State* v. *Cardoza* 11 *S. C.* 195, being a criminal case, does not apply.

The judgment of the Circuit Court is set aside, and a new trial is ordered.

SIMPSON, C. J., and McGOWAN, A. J., concurred.

---

ꜟ

CASE No. 1015.

---

* In the second edition of Spears, the title of this case is City Council of Charleston *v.* Kleinback.